### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:15-cv-03610 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| DOMINGO RODRIGUEZ, | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

### DOMINGO RODRIGUEZ' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT

Defendant Domingo Rodriguez, by his attorney Andy Norman,

answers, defends and counterclaims as follows.

### ANSWER

### Introduction

1.      This matter arises under the United States Copyright Act of 1976, as

amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

**ANSWER: Admitted.**

2.      Defendant is a persistent online infringer of Plaintiff's copyrights who

copied and distributed a large file containing 127 separate movies owned by

Plaintiff. This file is known as a "siterip," and it contains a significant percentage of

movies available on Plaintiff's website.

**ANSWER: Denied.**

1

3.      Indeed, Defendant's IP address as set forth on Exhibit A was used to illegally distribute each of the copyrighted movies set forth on Exhibit B.

**ANSWER: Denied.**

4.      Plaintiff is the registered owner of the copyrights set forth on Exhibit B (the "Copyrights-in-Suit").

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

<u>**Jurisdiction and Venue**</u>

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

**ANSWER: Admitted.**

6.      Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District, and therefore this Court has personal jurisdiction over the Defendant because (i) Defendant committed the tortious conduct alleged in this Complaint in this State, and (ii} Defendant resides in this State and/or (iii) Defendant has engaged in substantial and not isolated business activity in this State.

**ANSWER: Denied except to admit that Rodriguez lives in the district.**

7.     Based upon experience filing over 1,000 cases the geolocation technology used by Plaintiff has proven to be accurate to the District level in over 99% of the cases.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

8.     Venue is proper in this District pursuant to 28 U.S.C. § 139J(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii)  the Defendant resides (and therefore can be found) in this District and resides in this State; additionally, venue is proper in this District pursuant 28  U.S.C. §  J400(a) (venue for copyright  cases)  because Defendant or  Defendant's agent  resides or  may be found  in this District.

**ANSWER: Denied except to admit that venue is proper in this district.**

### Parties

9.     Plaintiff, Malibu Media, LLC, (d/b/a "X-Art.com") is a limited liability company organized and existing under the laws of the State of California and has its principal place of business located at 409 W. Olympic Blvd., Suite 501, Los Angeles, CA, 90015.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

10.     Defendant, Domingo Rodriguez, is an  individual  residing  at  5005  S. Lore! Avenue, Apt. l, Chicago, IL 60638.

**ANSWER: Admitted.**

## Factual Background

I.   *Defendant Used the BitTorrent File Distribution Network To Infringe Plaintiff's Copyrights*

11.    The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing systems used for distributing large amounts of data, including, but not limited to, digital movie files.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

12.    BitTorrent's popularity stems from the ability of users to directly interact with each other in order to distribute a large file without creating a heavy load on any individual source computer and/or network. The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take down notices and potential regulatory enforcement actions.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

13.    In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces called bits. Users then exchange these small bits among each other instead of attempting to distribute a much larger digital file.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

14.     After the infringer receives all of the bits of a digital media file, the infringer's BitTorrent client software reassembles the bits so that the file may be opened and utilized.

**ANSWER: Denied as to the word "infringer", and neither admitted nor denied as to the remainder in that Rodriguez lacks the knowledge with which to do so.**

15.     Each bit of a BitTorrent file is assigned a unique cryptographic hash value.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

16.     The cryptographic hash value of the bit ("bit hash") acts as that bit's unique digital fingerprint.   Every digital file has one single possible cryptographic hash value correlating to it.  The BitTorrent protocol utilizes cryptographic hash values to ensure each bit is properly routed amongst BitTorrent users as they engage in file sharing.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

17.     The entirety of the digital media file also has a unique cryptographic hash value ("file hash"), which acts as a digital fingerprint identifying the digital media file (which contains a video or series of videos). Once infringers complete downloading all bits which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate.

5

**ANSWER: Denied as to the word "infringer", and neither admitted nor denied as to the remainder in that Rodriguez lacks the knowledge with which to do so.**

18.     Plaintiff's investigator, IPP International UG, established a direct TCP/IP connection with the Defendant's IP address as set forth on Exhibit A.

**ANSWER: Denied.**

19.     IPP International UG downloaded from Defendant one or more bits of each of the digital media files identified by the file hashes on Exhibit A.

**ANSWER: Denied.**

20.     Defendant downloaded, copied, and distributed a complete copy of Plaintiffs works without authorization as enumerated on Exhibit A and B.

**ANSWER: Denied.**

21.     Each of the cryptographic file hashes as set forth on Exhibit A correlates to a digital media file containing a copyrighted movie or several copyrighted movies owned by Plaintiff as identified on Exhibit B.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

22.     The file hash listed on Exhibit A as "Xart Unauthorized Pack #89" is a digital media file containing a zip folder with 127 of Malibu Media's audiovisual works, each of which is identical (or alternatively, strikingly similar or substantially) to the original 127 works listed on Exhibit B.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

23.     IPP International UG downloaded from Defendant one or more bits of each file hash listed on Exhibit A. IPP International UG further downloaded a full copy of each file hash from the BitTorrent file distribution network and confirmed through independent calculation that the file hash matched what is listed on Exhibit A.  IPP International UG then verified that each digital media file, as identified by its file hash value set forth on Exhibit A, contained a digital copy of a movie that is identical (or alternatively. strikingly similar or substantially similar) to the original copyrighted  work listed on Exhibit B. At no time did IPP International UG upload Plaintiff's copyrighted content to any other BitTorrent user.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

24.     IPP  International  UG  connected,  over  a  course  of  time,  with Defendant's  IP address for each hash value as listed on Exhibit A. The most recent TCP/IP connection between IPP and the Defendant's IP address for each file hash value listed on Exhibit A is included within the column labeled Hit Date UTC.  UTC refers to Universal Time which is utilized for air traffic control as well as for computer forensic purposes.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

7

25.    An overview of the Copyrights-in-Suit, including each hit date, date of first publication, registration date, and registration number issued by the United States Copyright Office is set forth on Exhibit B.

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

26.    Plaintiffs evidence establishes that Defendant is a habitual and persistent BitTorrent user and copyright infringer.

**ANSWER: Denied.**

## Miscellaneous

27.    All conditions precedent to bringing this action have occurred or been waived.

**ANSWER: Denied.**

28.    Plaintiff has retained counsel and is obligated to pay said counsel a reasonable fee for its services

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

## COUNT I
## Direct Infringement Against Defendant

29.    The allegations contained in paragraphs 1-28 are hereby re-alleged as if fully set forth herein.

**ANSWER: Rodriguez realleges his answers to ¶¶ 1-28.**

30.    Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.

8

**ANSWER: Neither admitted nor denied in that Rodriguez lacks the knowledge with which to do so.**

31.     By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.

**ANSWER: Denied.**

32.     Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

**ANSWER: Denied, except to admit that he did not communicate with plaintiff.**

33.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce the works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of I7 U.S.C. §§ I06(3) and 501;

(C)     Perform the copyrighted works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the works' images in any sequence and for by making the sounds accompanying the works audible and transmitting said performance of the works, by means of a device or process, to members of the public capable of receiving the display (as set forth in I 7 U.S.C. § 101's definitions of "perform" and "publically" perform); and

9

(D)     Display the copyrighted works, in violation of 17 U.S.C. §§ I06(5) and 50I, by showing individual images of the works nonsequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § I 01 's definition of "publically" display).

**ANSWER: Denied.**

34.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**ANSWER: Denied.**

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)     Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiffs copyrighted works;

(B)     Order that Defendant delete and permanently remove the digital media files relating to Plaintiff's works from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the infringing copies of the works Defendant has on computers under Defendant's possession, custody or control;

(D)     Award Plaintiff statutory damages per infringed work pursuant to 17 U.S.C. § 504 (a) and (c);

10

(E)    Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)    Grant Plaintiff any other and further relief this Court deems just and proper.

**WHEREFORE, Domingo Rodriguez requests that the Court enter judgment on his behalf and against plaintiff on all claims, and grant other just relief.**

### DOMINGO RODRIGUEZ'S AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

### COUNT I
### ACTION FOR DECLARATORY JUDGMENT

1.    Rodriguez never has watched any of the 127 movies on plaintiff's list attached as Exhibit B. Rodriguez never has, to his knowledge, copied, downloaded, distributed or redistributed, performed, or publicly displayed any of the 127 movies on plaintiff's list.

2.    Rodriguez realleges ¶¶ XX of Counts II and III.

3.    This count is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4.    Rodriguez requests that the Court make the following declarations and/or judgments, based upon the allegations of Counts II and III:

    a.    Plaintiff intentionally is engaging in a scam, which includes hundreds or thousands of individuals such as Rodriguez. The scam is both unfair and deceptive under the Illinois Consumer Fraud and Deceptive

11

Business Practices Act, and designed solely to intimidate and deceive Rodriguez and others, and to coerce money from them;

b.  To the extent that plaintiff uses its alleged copyrights as part of the scam to intimidate, deceive and coerce money from unwary consumers, the copyrights cannot have been applied "[t]o promote the Progress of Science and useful Arts". See, the United States Constitution, Article 1, § 8.

c.  As to Rodriguez and this proceeding, and in keeping with ¶ 3b, the copyright registrations at issue in this case should be, and hereby are, stricken and void.

d.  In the alternative to ¶ 3c, plaintiff has failed to reasonably mitigate its damages and judgment should be entered for Rodriguez.

e.  As to Rodriguez, Plaintiff is not entitled to recover statutory damages or attorneys' fees.

## COUNT II
## PLAINTIFF'S UNFAIR OR DECEPTIVE ACTS OR PRACTICES, AND VIOLATIONS OF "THE UNIFORM DECEPTIVE TRADE PRACTICES ACT", ALL UNDER SECTION 2 OF THE CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

5.  For purposes of this Count Rodriguez assumes *arguendo*, but does not admit, that plaintiff holds valid copyrights to the 127 movies at issue. As set forth above, Rodriguez never has watched any of the 127 movies on plaintiff's list attached as Exhibit B. Contrary to plaintiff's explicit allegations Rodriguez never

12

has, to his knowledge, copied, downloaded, distributed or redistributed, performed, or displayed any of the 127 movies on plaintiff's list.

6. This action arises under the Illinois Consumer Fraud and Deceptive Business Practices Act ("the Act"), 815 ILCS 505/1, *et seq*. Section 2 of the Act provides, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act"… in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

7. Reference is made to ¶¶ 6 and 11-26 of plaintiff's complaint. As illustrated to some degree in its own complaint, plaintiff has intentionally engaged in a scam designed solely to intimidate and deceive Rodriguez and hundreds or perhaps thousands of others, and to coerce money from them. In addition to the allegations of the complaint, plaintiff's scam includes the following characteristics:

    a. On information and belief, in the past several years plaintiff has filed well more than a thousand copyright violation lawsuits similar to this one, against individuals who had no intention to, and were unaware, that they were engaging in conduct that might cause them to violate copyright laws.

    b. Plaintiff also has filed suit against people, such as Domingo Rodriguez, who did not search for, and who never have had any interest in

plaintiff's products, "X-art", erotica or pornography, but apparently are misled or deceived on the internet into clicking on plaintiff's products.

c.  Often plaintiff's products appear as pop-ups and other unsolicited files described as "free" or "free download", and do not contain any reference to plaintiff or its copyrights. No warning information or alert appears to suggest that copyrighted products might be involved.

d.  As part of the scam, plaintiff intentionally engages in public humiliation of defendants, so as to better coerce money from them. As plaintiff has done with Rodriguez through Exhibit B to its complaint, they arrange for a list of pornographic movie titles to be attached to the complaint and thereby publicly associated with the defendant.

e.  Exhibit B, which references evidence and not pleading information, serves no apparent pleading purpose other than to humiliate. This likely violates the Rule 11(b)(1) prohibition of harassment.

   i.  Several humiliating titles from Exhibit B to the pending complaint include:

      1.  "All Oiled Up".

      2.  "Cum in Get Wet".

      3.  "Early Morning Orgasm".

      4.  "F*** Me More".

      5.  "Listen to Me Cum".

      6.  "Taste Me".

       7. "Tight and Wet".

f. Consistent with the plaintiff's intentional, and recently developed, scam to intimidate, deceive and coerce money from defendants through an ever increasing number of lawsuits, **every one** of the 127 movies on Exhibit B allegedly was registered for copyright in 2012 or later. All but one allegedly was registered in 2013 or later.

g. Plaintiff and its owners and operators are fully aware of all these components to the scam, and on information and belief they likely have taken in millions of dollars in settlements as part of their scam over the past several years. It appears that they have refined their litigation scam over this time through experiences they have encountered in their mass litigation efforts.

h. It also appears that plaintiff has intentionally advanced and allowed the scam to continue unabated, so as to continue to rake in the money from defendants such as Rodriguez. Toward this end:

    i. Plaintiff has made no apparent public warning statements or other efforts to alert internet users such as Rodriguez to the risk they undertake, should they unwittingly click on a popup or file leading to one of plaintiff's products.

    ii. Plaintiff has made no apparent public warning statements or other efforts to alert internet users such as Rodriguez to be wary

of entering into one of the Torrent websites associated with plaintiff's scam.

iii. On information and belief, plaintiff has not issued any Digital Millennium Copyright Act (D.M.C.A.) takedown notices to the owners and/or operators of the Bittorrent trackers being used to distribute plaintiff's works, and from which plaintiff derives so many targets for litigation.

iv. Likewise, although plaintiff has filed an ever increasing multitude of lawsuits against individuals such as Rodriguez, by contrast, on information and belief, plaintiff has filed no litigation and taken no action to shut down these websites.

v. To the contrary, plaintiff appears to brazenly stoke the flames of copyright infringement. On information and belief, plaintiff has given the right to its computer forensics investigator(s) to distribute to the public plaintiff's copyright-protected works, so as to trap "defendants to be", such as Rodriguez. It is these "defendants to be" who unwittingly enter the Torrent "swarm" in which plaintiff's works are being distributed. On information and belief plaintiff's investigators then assemble evidence to use in litigation, and identify IP addresses of prospective defendants for plaintiff to sue. On information and belief, the fact is that without being in the swarm, plaintiff's investigator(s) would not

16

be able to log the IP addresses of hundreds or thousands of
future defendants found to be unwittingly downloading
plaintiff's works.

8.    Plaintiff's scam first violates the Act in that it is "deceptive" as
contemplated by § 2. Plaintiff knowingly works or allows the scam-process to
operate behind the scenes, and ferrets out the IP numbers of unwitting prospective
defendants who click on plaintiff's products. Second, plaintiff's scam involves "the
concealment, suppression or omission of any material fact, with intent that others
rely upon the concealment, suppression or omission of such material fact." Plaintiff
makes no effort to disclose to the unwitting victims who click on a "Free Download"
leading to one of its movies, the material facts that his or her IP address is being
recorded, that he or she is part of an intentionally created scam, and that a lawsuit
may be filed against the person. To the contrary, plaintiff continues the scam as
much as possible in the dark. The defendant first learns about the scam when he or
she is served with a summons, or a subpoena to his IP service provider seeking the
person's name and address.

9.    Plaintiff's scam also violates portions of the Uniform Deceptive Trade
Practices Act ("UDTPA"), 815 ILCS 510/2, which is incorporated into § 2 of the Act.
Plaintiff's scam violates the following provisions:

    a.    "A person engages in a deceptive trade practice when, in the course of
          his or her business, vocation, or occupation, the person:

    i.  (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

    ii.  (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

    iii.  (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

10.    Finally, plaintiff's scam is "unfair" as contemplated by § 2 of the Act. See, *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418 (2002). In *Robinson* the Illinois Supreme Court ruled that there are three ways to prove unfairness under the Act. In fact, plaintiff's scam is unfair under each of the three tests. First, plaintiff's practice of implementing its scam against hundreds of unwary internet consumers "offends public policy." Second, it is it is "immoral, unethical, oppressive, or unscrupulous." Finally, it "causes substantial injury to consumers."

WHEREFORE, Rodriguez requests that the Court:

A. Enter judgment in his favor, and award him substantial damages;

B. Enter the declaratory judgments in Count I;

C. Award him, as prevailing party, reasonable attorney's fees, costs and expenses, under both the Copyright Act, and the Consumer Fraud and Deceptive Business Practices Act; and

D. Grant him other just relief.

18

## COUNT III
## <u>PLAINTIFF'S FAILURE TO MITIGATE DAMAGES</u>

11.     Rodriguez realleges ¶¶ 5-10.

12.     Further evidence of the lucrative nature of plaintiff's scam is seen in plaintiff's unwillingness to take reasonable and available steps to mitigate its damages, in order to protect its allegedly copyrighted properties. Plaintiff has failed to mitigate its damages in reasonable and available ways which include the following:

>   a.  Plaintiff has made no apparent public warning statements or other efforts to alert internet users such as Rodriguez to the risk they undertake, should they unwittingly click on a popup or file leading to one of plaintiff's copyrighted products.

>   b.  Plaintiff has made no apparent public warning statements or other efforts to alert internet users such as Rodriguez to be wary of entering into one of the Torrent websites in which plaintiff's copyrights are being violated.

>   c.  Plaintiff has filed an ever increasing multitude of lawsuits against individuals such as Rodriguez.  By way of contrast, and on information and belief, plaintiff has filed no litigation and taken no legal action to shut down the websites which enable the public to obtain plaintiff's products at no charge.

>   d.  On information and belief, plaintiff has not issued any Digital Millennium Copyright Act (D.M.C.A.) takedown notices to the owners

19

and/or operators of the Bittorrent trackers being used to distribute plaintiff's works, and from which plaintiff derives so many targets for litigation.

WHEREFORE, Rodriguez requests that the Court:

A. Enter judgment on Rodriguez's behalf as an affirmative defense to the complaint, finding that plaintiff could have materially reduced or eliminated its damages had it made reasonable efforts at mitigation;

B. Award costs and other just relief.

Respectfully submitted,
**DOMINGO RODRIGUEZ**

/s/ Andy Norman

Andy Norman
Attorney At Law
1 N. LaSalle, Suite 600
Chicago IL 60602
(312) 332-2400
anormanlaw@gmail.com

F:\Users\anorman\Cases 2014-15\Rodriguez Domingo\Pleadings\ANSAffDefs&CCs20151027.docx

20